# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-2021
_____

Astrid Lucero Matias-Pablo; E.J.E.V.M.

*Petitioner*s

v.

Todd Blanche, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: April 16, 2026
Filed: August 14, 2026

_____

Before KELLY, GRASZ, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

Astrid Lucero Matias-Pablo and her minor son, E.J.E.V.M.,[1] seek review of the Board of Immigration Appeals' dismissal of their appeal from the Immigration

_____

[1]E.J.E.V.M. was named as a derivative beneficiary of Matias-Pablo's asylum claim. The "derivative" asylum statute permits a "spouse or child" of an applicant who qualifies for asylum to derive asylum through that applicant. 8 U.S.C. § 1158(b)(3)(A).

Judge's order of final removal against them. Because Matias-Pablo has not shown substantial evidence that would compel a reasonable adjudicator to grant her relief, we deny the petition.

## I. Background

Matias-Pablo and her son are Guatemalan nationals who unlawfully entered the United States in June 2018. Soon after, the Department of Homeland Security encountered Matias-Pablo and her son and placed them into removal proceedings for being present without admission or parole. Matias-Pablo conceded the charge of removability but sought relief from removal. In support, she claimed she suffered "physical, sexual, and emotional abuse, mostly at the hands of her partner Jose Vasquez." Matias-Pablo alleges the abuse occurred because she is a member of two social groups including "Guatemalan females" and "Guatemalan females without protection," and that the Guatemalan government is either unwilling or incapable of preventing the abuse.

Matias-Pablo has been subjected to abuse for most of her adult life. When she was fourteen years old, she was forced by her parents into a relationship with Jose under the guise that Jose would allow her to pursue a better life. After a year in the relationship, Jose began to abuse alcohol and in turn, Matias-Pablo. Jose would regularly come home and "yell, beat [Matias-Pablo] and then tie [her] up with whatever he could find usually to a piece of furniture." The next day, Jose would seek forgiveness, promise to never do it again, and claim "he only did it because he was too drunk." Jose's abuse worsened when he began to abuse drugs and he became increasingly violent toward her to the point of drawing blood and knocking her unconscious. Matias-Pablo had two children with Jose and Jose's abuse continued with accusations that she had been unfaithful, followed by more physical abuse, including while she was pregnant. After Jose assaulted Matias-Pablo's newborn baby, Matias-Pablo fled to her parents' home. Two days later, her baby died. Matias-Pablo never went back to live with Jose. While with her parents, life demonstrably improved. One day, she "ran into [Jose] on the street," who threatened

her and stated he would take her son and raise him as a Mara 13 gang member. "It was then that [Matias-Pablo decided to leave Guatemala and come to the United States with [E.J.E.V.M]." Matias-Pablo claims that she cannot return to Guatemala because "[i]t would mean reliving the sad past full of bitterness, poverty and pain for not having a good job and for being with a bad partner . . . [who] is a drug addict, an alcoholic and a Mara 13 gang member." For that reason, Matias-Pablo filed for asylum, statutory withholding of removal, and protection under the Convention Against Torture (CAT) shortly after being placed into removal proceedings following her entry into the country.

The Immigration Judge (IJ) denied Matias-Pablo's applications for asylum, withholding of removal, and protection under CAT. The Board of Immigration Appeals (BIA) affirmed, finding there was no sufficient nexus between the alleged persecution and her membership in the purported social groups. It also affirmed the IJ's denial of CAT protection because there was no evidence that Matias-Pablo would be harmed by the Guatemalan government or with its acquiescence. Matias-Pablo now petitions for review.

## II. Analysis

"We review the denial of an application for asylum, withholding of removal, or CAT relief for substantial evidence . . . , and we review questions of law *de novo*." *Rivera v. Garland*, 108 F.4th 600, 604 (8th Cir. 2024) (quoting *Uriostegui-Teran v. Garland*, 72 F.4th 852, 855 (8th Cir. 2023)). "Under the substantial evidence standard, the agency's findings of fact must be upheld unless the alien demonstrates that the evidence he presented not only supports a contrary conclusion but *compels* it." *Id.* (quoting *Uriostegui-Teran*, 72 F.4th at 855). "Only the BIA order is subject to our review, including the IJ's findings and reasoning to the extent they were expressly adopted by the BIA." *Id.* (quoting *Uriostegui-Teran*, 72 F.4th at 855).

Asylum is available to a petitioner who is "a refugee within the meaning of section 1101(a)(42)(A) of this title." 8 U.S.C. § 1158(b)(1)(A). A "refugee"

includes any person "who is unable or unwilling to return to [her country of nationality or where she last habitually resided] . . . because of persecution or a well-founded fear of persecution *on account of* . . . membership in a particular social group . . . ." *Id.* § 1101(a)(42)(A) (emphasis added). Because "the statute makes motive critical," Matias-Pablo "'must provide *some* evidence of it, direct or circumstantial" that shows her alleged persecution is on account of her membership in a particular social group. *INS v. Elias–Zacarias*, 502 U.S. 478, 483 (1992). In other words, Matias-Pablo must demonstrate her particular social group was or will be "one central reason" for the persecution; not that the protected ground was "incidental or tangential" to the alleged persecution. *Aguilar-Hernandez v. Bondi*, 163 F.4th 537, 539–40 (8th Cir. 2026) (quoting *Garcia-Moctezuma v. Sessions*, 879 F.3d 863, 868 (8th Cir. 2018)).

"Withholding of removal is a narrower remedy; it bars removal only to a particular country," *Zine v. Mukasey*, 517 F.3d 535, 540 (8th Cir. 2008), if the "alien's life or freedom would be threatened in that country because of the alien's . . . membership in a particular social group . . . ." 8 U.S.C. § 1231(b)(3)(A).

Matias-Pablo sought asylum and withholding of removal, claiming she was in two particular social groups: Guatemalan females and Guatemalan females without protection. The BIA assumed, without deciding, that Matias-Pablo's proposed social groups were cognizable[2] but denied relief because she failed to show her particular social groups were "one central reason" for her abuse. To merit relief at this stage, "the record evidence [must be] so compelling that no reasonable factfinder could fail to find in favor of the petitioner." *Gutierrez-Vargas v. Garland*, 42 F.4th 877, 882 (8th Cir. 2022) (quoting *Silvestre-Giron v. Barr*, 949 F.3d 1114, 1117 (8th

---

[2]Our review of the administrative record is limited to "[t]he IJ's findings . . . only to the extent that they have been adopted by the BIA." *Solis v. Holder*, 647 F.3rd 831, 833 (8th Cir. 2011). Here, the IJ found that the particular social groups proposed by Matias-Pablo were either overbroad (Guatemalan females) or lacked discernable boundaries (Guatemalan females without protection). But because the BIA did not base its decision on this basis, the groups' cognizability is not before us.

Cir. 2020)). Matias-Pablo fails to meet this high threshold, so we deny the petition as to both asylum and withholding of removal. *See Khilan v. Holder*, 557 F.3d 583, 586 (8th Cir. 2009) (noting that when a petitioner "fail[s] to meet the standard for asylum, it follows that [s]he also fail[s] to meet the standard for withholding of removal").

Matias-Pablo's allegations of domestic violence do not qualify her for asylum unless she can show Jose targeted her on the basis of a protected characteristic. *See* 8 U.S.C. § 1158(b)(1)(A) (petitioners for asylum must be "refugee[s]"). The record fails to demonstrate Jose targeted Matias-Pablo because she was a member of a particular social group. Instead, it demonstrates Jose was a generally violent person who perpetrated domestic violence against his family. For example, Matias-Pablo testified that Jose was a Mara 13 gang member who has "killed and tortured people"; that his physical abuse correlated with his substance abuse; and that Jose would abuse her because "[h]e was insanely jealous and paranoid to the point of being obsessive . . . ."

Attempting to show the required nexus, Matias-Pablo argues Jose targeted her because of her status as a Guatemalan female. To that end, she argues that Guatemalan society generally subordinates women and that Jose was "imbued by society" with abusive tendencies. But the factual hook is missing. While Matias-Pablo highlights that "[w]hen Jose threatened her, he did so in graphic language and referred to her status as a woman (and his woman)," this is insufficient to compel a reasonable fact finder to determine Jose abused Matias-Pablo *because* she was a member of the particular social groups "Guatemalan females" or "Guatemalan females without protection." *See Elias–Zacarias*, 502 U.S. at 481 n.1 ("To reverse the BIA finding we must find that the evidence not only *supports* that conclusion, but *compels* it—and also compels the further conclusion that [the petitioner was persecuted] *because of* that [protected characteristic]."); *Aguilar v. Garland*, 60 F.4th 401, 405 (8th Cir. 2023) (explaining reversal is only warranted if "a reasonable factfinder would have to conclude that [the protected characteristic] motivated [the] persecutors' actions sufficiently to qualify [the petitioner] for asylum").

Our decision is further supported by our opinion in *Aguilar-Hernandez.* There, we denied a similar petition involving particular social groups of "Guatemalan women," "Guatemalan women viewed as property within a domestic relationship," and "Guatemalan women who are unable to leave a relationship." 163 F.4th at 539. We likewise rejected the petitioner's nexus argument that the persecutor's conduct "reflect[ed] broader attitudes towards Guatemalan women" and instead affirmed the IJ's findings that there were "many reasons why [petitioner's partner] was abusive," including the fact that the abuse correlated with his abuse of alcohol and was motivated by a "belief that [petitioner] was unfaithful . . . ." *Id.* at 540. Such evidence, far from compelling reversal, indeed "support[ed] the Board's conclusion that [petitioner's] membership in one of the proposed social groups was 'incidental' or 'tangential' to [the abuser's] motivation for the alleged persecution." *Id.* We deny the petition as to Matias-Pablo's claims for asylum and withholding of removal.

Matias-Pablo's claim for CAT protection also fails. "'[W]e review the BIA's [factual] determinations regarding . . . CAT relief under the substantial evidence standard' and its 'legal determinations de novo.'" *Escobar v. Garland*, 55 F.4th 662, 669 (8th Cir. 2022) (quoting *Constanza v. Holder*, 647 F.3d 749, 753 (8th Cir. 2011)). To qualify for CAT relief, an alien must prove "that it is more likely than not that he or she would be tortured if removed . . . ." 8 C.F.R. § 1208.16(c)(2). The alien must show that the torture would be inflicted "by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity . . . ." *Id.* § 1208.18(a)(1). A government acquiesces when it is willfully blind to torture by third parties. *Hassan v. Rosen*, 985 F.3d 587, 590 (8th Cir. 2021).

Relevant to this claim, Matias-Pablo alleges a single incident where Jose "grabbed [her] by the neck and [her] hair" and "hit [her] in the stomach" while the police "saw everything and did nothing." Matias-Pablo also cites country condition

-6-

reports to support her assertion that "[w]omen are beaten, raped, and tortured without effective intervention from . . . the Guatemalan government."

But this fails to compel a finding that it is more likely than not Matias-Pablo would be tortured in the face of government acquiescence if removed. As we observed in *Aguilar-Hernandez*, the record demonstrates significant efforts the Guatemalan government has made to prevent domestic violence, including the establishment of a "twenty-four-hour victim service center that offers services to women who have experienced domestic violence or sexual assault," the criminalization of femicide, and the creation of "specialized courts" to focus on violence against women. 163 F.4th at 541. This "establishe[s] that the Guatemalan government has taken steps to combat such violence and did not acquiesce in torture." *Id.* Thus, Matias-Pablo's CAT claim fails.

### III. Conclusion

The petition for review is denied.

_____